IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANTHONY L. REGAN, | ) | CIV. NO. 06-00121 DAE-LEK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION TO |
| vs. | ) | DISMISS AND MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| JOHN DOE INDIVIDUALS OF | ) | |
| H.C.F. and the DEPARTMENT OF | ) | |
| PUBLIC SAFETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT**

*Pro se* plaintiff Anthony Regan, a Hawaii prisoner incarcerated at the

Halawa Correctional Facility ("HCF"), filed this prisoner civil rights complaint on

February 27, 2006.  Before the court is Defendants'[1] Motion to Dismiss  and

---

[1]The Motion was filed by Defendants Clayton Frank, Eric Tanaka, Edwin T. Shimoda, Gary Kaplan, Alan Asato, Deborah Stampfle, Vit U. Patel, M.D., Deanna Espinas, Janice Kalua, fka Janice Neilson, May Andrade, Dallen Paleka, Mary Tumminello, Theodora Leatumauga, Jan Ahn, Monica L.B. Chun, and Sarah Ornsbee's (collectively, "Defendants").  Plaintiff also named Wesley Mun and R. MacLaren (identified as "R. Moelaren") as Defendants.  They are no longer employed by the Hawaii Department of Public Safety ("DPS").  After DPS gave their last known addresses to the U.S. Marshals Service, the court received notice that Mun is also no longer at that address.  (*See* Doc. No. 107.)  MacLaren, however, returned his Waiver of Service of Summons on July 25, 2007.  It does not appear that MacLaren is represented by the Attorney General's Office.

Supplemental Motion for Summary Judgment.[2]  (*See* Doc. Nos. 108, 115, & 117.)

Defendants argue that: (1) Plaintiff's claims are, for the most part, unexhausted, and

that the only exhausted claim, alleging deliberate indifference against Defendant Vit

Patel, M.D., fails to state a claim; (2) Plaintiff fails to make specific allegations

against particular Defendants, thus failing to state a claim against any Defendant;

(3) Plaintiff's claims are time-barred; and (4) they are entitled to qualified

immunity.

Plaintiff has filed an Opposition to the Motion (Doc. No. 132) and

Defendants have filed their Reply (Doc. No. 133).  Pursuant to Local Rule 7.2(d),

the court finds this matter suitable for disposition without a hearing. For the

following reasons, Defendants' Motion to Dismiss and Motion for Summary

Judgment are GRANTED.

## I. <u>LEGAL STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 12(b) ("Fed. R. Civ. P."),

Defendants move to dismiss for failure to exhaust available administrative

---

[2] On August 23, 2007, the court notified the parties that it was converting the Motion to Dismiss in part into a Motion for Summary Judgment.  (*See* Doc. No. 115.)  Defendants then filed a Supplemental Memorandum in Support of Motion for Summary Judgment.  (Doc. No. 117.)

remedies.  Defendants also move for summary judgment pursuant to Fed. R. Civ. P

56(b).

## A.   Motion to Dismiss for Failure to Exhaust

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o

action shall be brought with respect to prison conditions under [42 U.S.C. § 1983],

or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).  Section 1997e(a) applies to all prisoner suits

relating to prison life.  *Porter v. Nussle*, 435 U.S. 516, 532 (2002).  Prisoners must

complete the prison's administrative process, regardless of the relief sought by the

prisoner and regardless of the relief offered by the process, as long as the

administrative process can provide some sort of relief on the complaint stated.

*Booth v. Churner*, 532 U.S. 731, 741 (2001).  "Proper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules." and may

not be satisfied "by filing an untimely or otherwise procedurally defective . . .

appeal."  *Woodford v. Ngo*, — U.S. —, —, 126 S. Ct. 2378, 2386 & 2382 (2006).

Exhaustion must be satisfied prior to filing suit.  *McKinney v. Carey*, 311 F.3d

1198, 1199-1201 (9th Cir. 2002).

Section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, — U.S. —, —, 127 S. Ct. 910, 921 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies is treated as a matter in abatement and is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. *Wyatt*, 315 F.3d at 1119. In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119-20. If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Id.*

B.    **Motion for Summary Judgment**

Summary judgment shall be granted when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of

4

factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  *See id.* at 323.  In inmate cases, the courts must

> distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, — U.S. —,  —, 126 S. Ct. 2572, 2576, 165 L. Ed. 2d 697 (2006).

A moving party without the ultimate burden of persuasion at trial-- usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The moving party must identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." *Porter*, 419 F.3d at 891 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003); *Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

## II. <u>DISCUSSION</u>

There are fourteen claims remaining in this action.[3]  Plaintiff alleges that all allegations occurred between February 9, 2004, and January 7, 2005.[4]  (*See*

---

[3] Although there are technically fifteen remaining claims, Counts 1, 2, 3, 4, 6, 14, 15, 17, 18, 19, 22, 23, 24, 29, and 30, the court does not consider Count 30 a separate claim, as it simply reiterates in conclusory fashion that all of the allegations in the preceding claims constitute cruel and unusual punishment.  This claim  is at best duplicative of the preceding claims and shall be disregarded as such.

[4] The court notes that Plaintiff filed another action, *Regan v. Dep't of Public Safety*, *et al.*, Civ. No. 07-00029 JMS, raising many of the same allegations as

First Amd. Comp. at 74 ("*All counts are generally for the periods of 2-9-04 to 1-7-05.")) Although Defendants fail to argue the merits of their motion as to each separate count, instead arguing in conclusory fashion that most claims are unexhausted, time-barred, or fail to state a claim, the court separately analyzes each count to determine whether it is administratively exhausted, fails to state a claim, or presents a genuine issue of material fact.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A.**     **Summary Judgment is Granted as to Counts 1, 2, 15, 17, 18, 23 and 24.**

1.     Counts 1 and 15, Alleging Deliberate Indifference to Plaintiff's <u>Serious Medical Needs</u>

In Counts 1 and 15, Plaintiff alleges that Defendant Dr. Patel, DPS Chief Psychiatric Officer,[5] denied him adequate medical care by refusing to give

---

found in this Complaint, but alleging that these claims occurred between January 7, 2005, and August 17, 2006.  (*See* Civ. No. 07-0029, Doc. No. 1, Comp. at 6W ¶ 12.)

[5] Dr. Patel is now deceased.  (*See* Doc. No. 109, Suggestion of Death Upon the Record.)

him the appropriate dose of medicine for his psychiatric condition, thus violating the Eighth Amendment.

The Government violates the Eighth Amendment if it fails to address the medical needs of incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Lopez*, 203 F.3d at 1131. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 102. "A medical need is serious if the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Dickey v. Vargo*, 2004 WL 825624, at *2 (D. Or. Feb. 27, 2004) (*citing McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (further citations omitted)). Nonetheless, a "difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). "'A difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (further citations omitted). To establish that such a

disagreement constituted deliberate indifference, a prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the inmate's] health." *Id.* (citations omitted).

When Plaintiff was admitted to Oahu Community Correctional Facility ("OCCC") on December 8, 2003, he informed prison medical officials that he had a history of paranoid schizophrenia and had been prescribed Risperdal for this condition. Plaintiff met with Dr. Patel the next day, December 9, 2003, informed Dr. Patel of his past medical history, and stated that he had taken Celexa and Zyprexa for his schizophrenia and depression. Dr. Patel ordered Zyprexa, 10 mg. to be taken each evening, and Lexapro, an equivalent to Celexa, 10 mg., to be taken each morning.[6]

On January 5, 2004, Dr. Patel increased Plaintiff's Zyprexa dosage to 15 mg., and continued the Lexapro at its original dosage. Approximately one month later, on February 3, 2004, Dr. Patel noted that Plaintiff's medication was

---

[6] These uncontroverted facts are taken from the declaration of Kay A. Bauman, M.D., DPS Medical Director, her summarized review of Plaintiff's medical chart, and from Plaintiff's DPS medical chart. (*See generally* Bauman Dec., Ex. A 1-2; Ex. B.)

working, that Plaintiff heard no voices, appeared stable, and was able to appear in court.

Plaintiff was transferred to Halawa Correctional Facility ("HCF") a week later, on February 10, 2004, and his transfer sheet properly listed his psychiatric medications.  Dr. Patel continued to treat Plaintiff at HCF.  On February 11, 2004, Dr. Patel renewed Plaintiff's psychiatric medication for three months.

On February 19, 2004, Plaintiff's chart reflects that Plaintiff wanted to increase his Lexapro dosage, and that he was referred to Dr. Patel.  After examination, Dr. Patel decided that Plaintiff needed to give his medication more time to take full effect, and declined to alter his dosages.[7]  Plaintiff was upset at this, and left using abusive language.  (Ex. B. 9.)

Plaintiff continued to demand an increase in his Lexapro dose and to see an outside physician.  Although he was told how to make an outside medical appointment, he apparently never did so.  Plaintiff was seen consistently by HCF medical personnel and by Dr. Patel, approximately monthly, from the time he was admitted to HCF in February 2004, until August 18, 2007, the last date entered on

_____

[7] Dr. Bauman states that the dosages that Dr. Patel prescribed are the usual dosages for these medications, but not more.  (Defs.' Ex. A at 2.)

Plaintiff's medical chart before the Court.  While Plaintiff was in special holding, he was seen several times per week.  (Ex. B. 4/18/05 notation.)

On June 16, 2004, at Plaintiff's request, Dr. Patel altered Plaintiff's medication, ordering that both pills be taken in the evening, rather than one pill in the morning and one pill in the evening.

Plaintiff's medication was consistently renewed until April 16, 2005, when Plaintiff's chart reflects that he was angry and hostile and refused to take his medicine.  Prison officials then discovered several Zyprexa pills in Plaintiff's cell during a shakedown.[8]  Plaintiff was apparently hoarding his medication.  Plaintiff stated that he wanted to be able to take his medication when *he* decided, not when directed by medical personnel.  In response, on April 29, 2005, Dr. Patel discontinued Plaintiff's Zyprexa, but continued the Lexapro.[9]  Plaintiff continued on

---

[8] Defendants provide evidence showing that they discovered nineteen Zyprexa pills that Plaintiff hoarded in his cell.  While Plaintiff admits that he was hoarding pills, because he wanted to be able to take the medication when he believed he needed it, he alleges that it was only eleven Zyprexa pills and that the remainder were Tylenol.  (*See* Pl. Op. to Mot. 13.)

[9] The court notes that this date is beyond the operative dates of this Complaint, which Plaintiff has specifically limited to allegations occurring between February 9, 2004, apparently the day before he was transferred to HCF, and January 7, 2005.

this regimen for several months, until Dr. Patel ordered an equivalent dosage of Celexa instead of Lexapro.

Plaintiff remained on this medication schedule for several months, and his medical charts reflect that he was stable.  On April 19, 2007, Dr. Patel noted that, although Plaintiff was "clean and neat" he was experiencing paranoid thoughts.  Dr. Patel then added Resperdal 1mg., which is the medication Plaintiff had reported using prior to his incarceration.  Plaintiff continues this course of treatment to date.

The court does not second-guess a physician's decision to provide one type of treatment over another.  Plaintiff provides no contrary evidence, expert or otherwise, showing that: (1) he required a different course of treatment; or that (2) Dr. Patel's course of treatment did not reflect the standard of care in the medical community for his mental illness.  *See Jackson*, 90 F.3d at 332 (*citing Williams v. Vincent*, 508 F2d 541, 543-44 (2d Cir. 1974).  As such, all that is before the court is a difference of opinion between Dr. Patel and Plaintiff regarding his treatment, which is insufficient to state a ¶ 1983 claim.  *See Franklin*, 662 F.2d at 1344.

It is apparent that Plaintiff has been treated consistently for his psychiatric problems since he was admitted to DPS custody, and continuing until at least August 2007.  The evidence before this Court does not support a finding of

12

deliberate indifference to Plaintiff's serious medical needs.  To the contrary,

Plaintiff fails to present a genuine issue of material fact controverting Defendants'

evidence that he was consistently treated for his psychiatric problems and that

Plaintiff merely disagrees with Dr. Patel's medical treatment.  Summary Judgment

is GRANTED as to Plaintiff's claims against Dr. Patel in Counts 1 and 15.

   2. Counts 2 and 23, Alleging Denial of Access to the Courts

    In Count 2, Plaintiff alleges that he was denied adequate access to the

prison law library, which he alleges resulted in the denial of access to the courts,

from February 9, 2004, to January 7, 2005, in violation of the First Amendment.

In Count 23, Plaintiff alleges that Defendants failed to provide him with adequate

paper and writing utensils, resulting in the denial of access to the court.

   a. Count 2

    In Count 2, Plaintiff alleges that he was not allowed to visit the prison

law library more than once per month, until he had a docketed case in any court.

He alleges that, although he filed a state post-conviction petition on or about

September 15, 2006, it was "sloppy," and could have been filed sooner if he had

been allowed more access to the law library.  Plaintiff names Defendants Kalua fka

Neilson, Espinas, and Frank as responsible for this alleged denial.

Defendants argue, without any degree of detail regarding those of Plaintiff's grievances relating to this claim, that, although Plaintiff filed grievances regarding his lack of access to the law library, as well as other problems he encountered with the law library,[10] his grievances were filed for supposed infractions that occurred after the dates alleged in his Complaint.  Defendants submit twenty-six of Plaintiff's grievances, both Step 2 and Step 3, regarding this claim.  (*See* Motion to Dismiss, Defs.' Exs. A & C.)   Defendants are correct that *twenty-four* of Plaintiff's grievances concern allegations occurring outside of the Complaint's time period.[11]   Moreover, eleven of these grievances were either pending resolution or filed after Plaintiff commenced this suit, and were thus, unexhausted at the time of filing suit.  (*See* Griev. Nos. 121994, 121045, 123217, 126464, 126831, 123171, 122899, 122888, 123219, 121093, and 121029.)

---

[10] Plaintiff's grievances chiefly complain of the law library's failure to make him "same-day" copies, the law librarian's alleged "swearing" and "yelling" at him, instances when the law library was closed on certain days due to lockdown at the prison or short prison staff,  that he was not allowed to attend on four other days (although the grievance responses show that Plaintiff was given six hours library attendance per week at this point), and the lack of a hornbook explaining how to sue state officials.  These grievances do not state a claim of denial of access to the courts by virtue of the denial of a law library.

[11] *See* Grievance Nos. 116344, 118053, 121994, 121045, 12317, 112153, 115741, 114084, 115774, 126464, 126831, 123171, 122899, 122888, 123219, 121093, 121029, 115867, 115395, 115585, 112151, 115740, 114092, and 115742.

14

Two of those grievances, however, Nos. 102395 and 106301, were filed respectively on October 28, 2004, and December 8, 2004, clearly during the Complaint's operative time period of February 9, 2004, to January 7, 2005.  In these grievances, Plaintiff complains that six months prior, on March 25, 2004, he was unable to attend the law library, and that he was currently "in trouble [with] the law library so now I will be unable to attend."  (Defs.' Ex. C, Griev. No. 102395.)  If this grievance concerns only events on March 25, 2004, it is likely improperly exhausted.  (*See* DPS, State of Hawaii Policies and Procedures Manual (1992), 493.12.03(4.), requiring that an initial grievance be filed within fourteen days from the date the infraction allegedly occurred.)   Defendants do not make this argument, however.

Liberally reading this grievance, it is also possible that Plaintiff was grieving a denial of law library access just prior to the date of the grievance, or during October 2004.  Of course, the grievance does not specifically state that Plaintiff was denied law library access, only that, because he is in trouble, "[he] will be unable to attend."  (Defs.' Ex. C, Griev. No. 102395.)  Nonetheless, without more, Defendants' sparse argument that Plaintiff failed to administratively exhaust his claim of denial of access to the law library fails, as this grievance is, in fact,

15

exhausted.  Defendants' Motion to Dismiss Count 2 for failure to administratively exhaust is DENIED.

This does not end the inquiry.  First, as noted above, the statements in the grievance itself do not provide a basis for finding that Plaintiff was denied access to the law library.  Plaintiff merely complains that he *might* be prohibited from attending because he was in the special holding unit, and is now "in trouble" with the law library.  In response to his grievance and appeal, the prison informed Plaintiff that (1) special holding inmates are not automatically scheduled for law library, they must request it, and (2) if he requests it, and provides documentation that he has two pending cases as he alleges in the grievance, he will be scheduled for the law library.  Thus, it does not appear, at least from this grievance, that Plaintiff was actually denied access to the law library.

More importantly, reviewing Plaintiff's allegations in this claim in conjunction with his statements in the exhausted grievance, and in light of Plaintiff's judicially noticed litigation history, Plaintiff fails to state a claim for the denial of access to the courts, which is the underlying constitutional violation he alleges.  Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  That right is limited to direct criminal appeals, habeas petitions, and civil rights actions.  *Id.* at 354.  Claims for denial of

16

access to the courts may arise from the frustration or hindrance of "a litigating

opportunity yet to be gained" (forward-looking access claim) or from the loss of a

meritorious suit that cannot now be tried (backward-looking claim). *Christopher v.*

*Harbury*, 536 U.S. 403, 412-15 (2002). To state a denial of access to the courts

claim, a plaintiff must allege facts demonstrating that he suffered an actual injury by

being shut out of court. *Id.* at 415; *Lewis*, 518 U.S. at 351. In other words, a claim

for deprivation of the constitutional right of access to the courts must allege both

the underlying cause of action, whether that action is merely anticipated or already

lost, and the official acts that frustrated the litigation. *Harbury*, 536 U.S. at 415-16.

   To clarify: the constitutional right is a right of access to the courts;

inmates do not have a freestanding right to a law library. *Lewis*, 518 U.S. at 351

("[P]rison law libraries and legal assistance programs are not ends in themselves,

but only the means for ensuring a reasonably adequate opportunity to present

claimed violations of fundamental constitutional rights to the courts."). That right

"requires prison authorities to assist inmates in the preparation and filing of

meaningful legal papers by providing prisoners with adequate law libraries or

adequate assistance from persons trained in the law." *See Bounds v. Smith*, 430

U.S. 817, 828 (1977) (footnote omitted). An inmate "cannot establish relevant

actual injury simply by establishing that his prison's law library or legal assistance

program is subpar in some theoretical sense," but rather the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351.

   Plaintiff fails to demonstrate, or even allege, any actual injury.  Nor can he do so, based on the record before the court.  Plaintiff admits in his Complaint, in this very claim, that he filed a Hawaii Rules of Penal Procedure, Rule 40 post-conviction petition "on or about [September 15, 2006]," although he alleges that it was sloppy and insinuates that if he had better access to the law library it would have been better prepared.  (Comp. at 11.)  Taking judicial notice of this Court's own decisions and other public records, however, Plaintiff actually filed this Rule 40 petition, *Regan v. State*, S.C. No. 27505, on *September 15, 2004*.[12] Plaintiff has recently noticed the court that the Supreme Court of Hawaii has recently decided his Rule 40 petition.  (*See* Doc No. 131, Pl.'s Letter, dated October 18, 2007 ("The Hawaii "Supreme Court" has issued a summary dispositive order

---

  [12] The court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). Judicial notice may be taken of court records. *Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1978); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

that effectively dismissed my state post-conviction petition[.]"); *see also Regan v. Frank*, Civ. No. 07-00181 DAE, "Order Dismissing Petition," entered April 17, 2007; http://hoohiki2.courts.state.hi.us/jud/ Hoohiki/main.htm (reflecting Plaintiff's state court docket in his state court Rule 40 petition).

As this court noted in Civ. No. 07-00181, Plaintiff's Rule 40 petition was considered on its merits and denied by the state circuit court, and promptly appealed to the Hawaii Supreme Court.  This petition was not hindered by prison officials allegedly denying Plaintiff sufficient law library time.  Plaintiff's allegations that he was unable to visit the HCF law library as often as he wished, or that he was only able to file a "sloppy" petition, or that he could have filed this petition sooner, but for Defendants' actions, are simply smoke without fire. Plaintiff was clearly able to timely file his Rule 40 petition, which was considered and decided on its merits by the Hawaii courts.  There is no evidence before this court that Plaintiff's Rule 40 Petition was rejected as untimely, or as otherwise procedurally defective, based on prison officials' alleged interference with Plaintiff's ability to access the law library.

Moreover, the right of access to the courts is only the right to bring complaints to the court; it is not a right to discover or effectively litigate such claims.  *See Lewis*, 518 U.S. at 354-55; *Madrid v. Gomez*, 150 F.3d 1030, 1041 (9th

Cir. 1998).  Plaintiff concedes in his Complaint that he was able to bring his Rule

40 petition to the Hawaii courts.  Records show that Plaintiff filed this Petition in

2004.  Plaintiff has not suffered any actual injury to the filing of this state court

action due to any perceived deficiencies in the prison's law library.

Plaintiff also filed two suits in federal court during the time period

alleged in this Complaint, *Regan v. Hawaii*, Civ. No. 04-00626 ACK,[13] filed

October 20, 2004, and *Regan v. Oahu Cmty Corr. Facility,* Civ. No. 04-00731

SOM,[14] filed December 15, 2004.  Neither of these actions were hindered by

Plaintiff's only exhausted claim here, that he was unable to get law library forms

while he was in special holding in October to December 2005.  (*See* Ex. C.,

Grievance Nos. 102395 and 106301.)  Each were considered on their merits and

disposed of accordingly.

Plaintiff's conclusory allegations that he was denied access to the court

due to alleged restrictions on his law library attendance are insufficient to state a

---

[13]   Civil No. 04-00626 involved Plaintiff's first habeas petition, which was dismissed without prejudice for failure to exhaust state judicial remedies.

[14]   Civil No. 04-00731, was a § 1983 action alleging many of the same claims as alleged in the present Complaint, albeit for different dates.  It was dismissed for Plaintiff's failure to administratively exhaust his claims at the prison, despite the court's finding that Plaintiff was well-aware of the prison's administrative grievance procedure no later than May 30, 2002.

claim.  Inmates do not have a freestanding right to a law library or legal assistance. *Lewis*, at 351.  Law libraries and legal assistance programs are only a means of ensuring access to the courts.  *Id.*  Plaintiff cannot establish relevant actual injury simply by stating that he was denied law library forms, after the date he had already filed his state post-conviction petition, which is the only court case he cites as an example of actual injury.  *Id.*

The uncontroverted record before the court, including Plaintiff's Complaint, grievances, correspondence, and court records, reveals that there is no genuine issue of material fact regarding Plaintiff's failure to show actual injury in support of this claim.  Summary Judgment is GRANTED as to Plaintiff's claims of denial of access to the court in Count 2.

b.     Count 23

In Count 23, Plaintiff alleges that Defendants failed to provide him with adequate writing materials, hindering the filing of his Rule 40 state post-conviction petition.  First, as set forth above, Plaintiff fails to show any actual injury to the filing of this post-conviction petition, or to any other action.  As such, he fails to state a claim of denial of access to the courts based on this claim.

Second, this court has since held, and the entire record before the court establishes, that Plaintiff was, in fact, given adequate supplies of writing materials,

21

at least since he filed the present action.  (*See* Doc. No. 86, "Order Denying Plaintiff's Motion Requesting Order," entered Dec. 28, 2006; *see also* Morreira Dec., filed Dec. 20, 2006 (establishing HCF procedures for inmates requesting writing materials, and that Plaintiff had failed to do so until Nov. 7, 2006, at which time he was given all the supplies necessary.)

Further, taking judicial notice of Plaintiff's filings in Civ. Nos. 04-00731, 04-00626, and *Regan v. State*, S.C. No. 27505, it is evident that Plaintiff had more than adequate writing supplies to file and prosecute these actions, which were commenced during the time period that he alleges he did not have adequate writing supplies.  In Civ. No. 04-00731, Plaintiff filed eighteen documents between December 15, 2004, and December 20, 2005, when the action was terminated.[15]  In Civ. No. 04-00626, Plaintiff filed five documents between October 20, 2004, and January 24, 2005.[16]  Finally, in his Rule 40 state court post-conviction petition,

---

[15] *See* Civ. No. 04-00731, Doc Nos. 1 (Complaint); 4 (in forma pauperis application); 8 (Mot. for Temp. Rest. Ord.); 9 (Mot. to Dispense with Security) 10 (Mot. to Amend Comp.); 12 (Amended Complaint); 14 (Request for Copies); 19 (Ex Parte Mot. for Ext. of Time); 20 (Ex Parte Mot. for Ext. of Time to File Second Amended Comp.); 25 (Second Amended Comp.); 27 (Third Amended Comp.); 32 (Mot. for Relief from Judgment); 35 (Reply to Defts' Statement); 37 (Mot. for Ord. to Compel Discovery); 40 (Op. to Defts' Mot. to Dismiss); 44 (Reply to Defts' Mem. in Op.); 45 (Mot. for Recon.); and 50 (Mot. for Recon.).

[16] *See* Civ. No. 04-00626, Doc. Nos. 1 (Petition); 3 (in forma pauperis application); 6 (Amended Pet.); 9 (Not. of Appeal); and 11 (Not. of Appeal

Plaintiff filed numerous documents, as detailed in this court's Order Dismissing Petition filed in Civ. No. 07-00181.[17]  The court's review of these filings, as well as Plaintiff's case manager's declaration, and Plaintiff's own statements in his grievance, make clear that Plaintiff was not denied access to the courts by any perceived lack of writing supplies during the time alleged in this Complaint, or in fact, at any time since.  There is no genuine issue of material fact relating to this claim and summary judgment is GRANTED.[18]

3.      Counts 17 and 24: Denial of Contact with Outside World.[19]

In Count 17, Plaintiff alleges that he was not allowed to use the

---

requesting cert. of appealability).

[17]  This Order held that any delay Plaintiff encountered in resolving this state court action was due to Plaintiff's voluminous filings in his state court proceedings, beginning in September 2004, when he filed the action in the state circuit court.  *See also* http://hoohiki2.courts.state.hi.us/jud/ Hoohiki/main.htm

[18]  As discussed below, Plaintiff also failed to administratively exhaust Count 23, and it is dismissed on this basis as well.

[19]  Defendants argue that all of Plaintiff's claims, excepting his claims against Dr. Patel, are unexhausted.  Defendants provide no specific argument or grievances relating to Plaintiff's allegation that he was denied telephone privileges for a certain period of time.  Because Defendants' memorandum is so bare, the court is uncertain whether Defendants overlooked Count 17, or whether there were simply no grievances regarding this issue.  Since discussion of Count 17 is omitted in Defendants' Exhibit A, containing Plaintiff's relevant grievances, however, the court suspects the former.

23

telephone to contact his mother when she was ill.[20]   When the court screened the

Complaint pursuant to 28 U.S.C. § 1915, it found that this claim, taken in

conjunction with Plaintiff's claims that he was also denied writing materials to

contact his family in Count 24, might show that Plaintiff was being denied access to

all communications with the outside world, in violation of the First Amendment.

Reviewing these claims now, with the benefit of a more complete record, the court

is left with a different conviction.

        Prisoners have a limited First Amendment right to telephone access,

"subject to reasonable limitations arising from the legitimate penological and

administrative interests of the prison system." *Johnson v. California*,  207 F.3d

650, 656 (9th Cir. 2000) (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747

(9th Cir. 1986)); *see also Halvorsen v. Baird*, 146 F.3d, 680, 689 (9th Cir. 1998) ).

This right has been defined "as the right to communicate with persons outside

prison walls.  Use of a telephone provides a means of exercising this right." *Valdez*

*v. Rosenbaum*,  302 F.3d 1039, 1048 (9th Cir. 2002) (citing *Pope v. Hightower*, 101

F.3d 1382, 1385 (11th Cir. 1996) (no First Amendment violation since, among

other reasons, the prisoner had an "alternative means of exercising [the right]

because he could receive visitors and correspond with virtually anyone he

---

[20] Count 17 was dismissed in part, and this is its only remaining claim.

24

wished.")).  *Valdez* concluded the telephone restriction at issue there did not violate the First Amendment because, *inter alia*, the prisoner had alternative means of communicating with persons outside the prison walls, allowing the prisoner telephone access would have required the prison to allocate additional resources, and there were no obvious, easy alternatives to the challenged telephone restriction.

Plaintiff's grievances show that he was actually receiving writing paper while in prison, although he complained that the paper was too "dark white" for his preferences.  Moreover, in light of the number of pages of documents Plaintiff submitted in each case that he filed during the time alleged in the Complaint, as detailed above, it is certain that Plaintiff had sufficient means to contact his family other than by telephone.  Plaintiff admits that, during the time alleged in the Complaint, he sent and received mail, although he complains that the mail was sometimes delayed.  (*See* Compl. at 25.)  His grievances and court filings show that he had adequate access to paper and writing utensils during the time he alleges he had no paper or writing materials to contact his family and was also denied access to the telephone.   There is no genuine issue of material fact that Plaintiff had sufficient means of communicating with the outside world.  Summary

Judgment is GRANTED as to Counts 17 and 24.[21]

    4.    <u>Count 18, Alleging Unsanitary Conditions.</u>

In Count 18, Plaintiff alleges that he was subjected to unsanitary conditions in his cell when his toilet continually "ran" and leaked, and his sink was clogged during an unspecified two-week time period, violating the Eighth Amendment.

Defendants provide Plaintiff's grievance relating to this claim, submitted November 7, 2004. In that grievance, Plaintiff complains that his toilet has been broken for seven days. Two days later, on November 9, 2004, prison maintenance personnel repaired Plaintiff's toilet and clogged sink. As his claim was resolved, Plaintiff did not pursue any further steps in the grievance process. Defendants appear to argue that, because Plaintiff proceeded no further in the grievance process, this claim is unexhausted.[22] Defendants are, again, mistaken.

_____

[21] As discussed below, Plaintiff also failed to exhaust his claims in Count 24 and those claims are dismissed on this basis as well.

[22] The court notes again that Defendants do not argue the merits as applied to the facts of this or any other claim, whether a specific claim is exhausted or not, or time-barred and why, or whether it fails to state a claim and why. In arguing non-exhaustion, Defendants perfunctorily state that, other than Plaintiff's claim against Dr. Patel, *all* of his claims are unexhausted. (*See* Defs.' Mem. In Support of Mot. to Dismiss, at 9 ("Plaintiff failed to exhaust his administrative remedies for any claim except Count I regarding Dr. Patel.")) Defendants provide a confusing, inaccurate chart, which gives no relevant facts regarding any particular grievances,

Once a prisoner has exhausted "available" remedies, and no further relief is available, ie. if his grievance is upheld at a first or second level, then there are no further "remedies . . . available," and the prisoner need not continue to pursue the grievance. *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (holding that inmates are not required to appeal a favorable grievance decision before filing suit); *see also Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004) ("[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted."). Because Plaintiff's grievance was resolved and it undeniably encompasses the time period alleged in the Complaint, it is exhausted and Defendants' Motion to Dismiss this claim as unexhausted is DENIED.

Again, this does not end the matter. Initially, Plaintiff's allegation was somewhat unclear, and the court, in an abundance of caution, allowed this claim to proceed. With the benefit of Plaintiff's grievances however, and a careful rereading of this claim, it is now apparent that Count 18 fails to state an Eighth Amendment violation.

---

such as the dates they were filed, the claims raised therein, or any sufficient detail regarding the claims to which they relate. Defendants simply leave it to the court to examine the details of Plaintiff's claims and grievances and determine what is and is not exhausted. As noted throughout this Order, Defendants are mistaken about the exhaustion of several of Plaintiff's claims.

The Eighth Amendment does not require that prisons be comfortable, only that they be humane. *Farmer v. Brennan*, 511 U.S. 825, 830-31 (1994). Prisoners alleging Eighth Amendment violations based on unsafe conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. *Id.* at 833. Prison officials display deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to that inmate's health or safety. *Id.* at 837-838. Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See Hudson v. McMillian*, 503 U.S. 1, 9(1992). Subjecting "a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).

Taking Plaintiff's allegations as true, and in the light most favorable to him, in concert with the only grievance he filed over this incident, it is clear that prison officials were not deliberately indifferent to his situation, nor was he subjected to a severe lack of sanitation for a prolonged period of time. Within two days of notification of the problem, prison maintenance fixed Plaintiff's sink and toilet. Plaintiff was obviously satisfied with this result, as he did not pursue his

28

grievance further.  This does not exhibit the necessary deliberate indifference
required to implicate the Eighth Amendment.

Plaintiff's claim is also notable for what it does not say.  There are no
allegations that standing water accumulated in Plaintiff's cell, or that the toilet
overflowed or flooded his cell with raw sewage, in either his Complaint or in his
grievance.  *See Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (vermin
infestation accompanying standing water and flooded toilets violated Eighth
Amendment).  Nor does Plaintiff claim there was extensive damage, if any, to his
personal belongings.  Leaky toilets and puddles are unpleasant but not
unconstitutional.  There is no genuine issue of material fact here and Summary
Judgment is GRANTED as to Count 18.

**B.     Counts 3, 4, 6, 14, 19, 22, 23, 24, and 29 Are Dismissed for Failure to
Exhaust.**

Hawaii prisoners may administratively exhaust their complaints and
grievances pursuant to the DPS Policies and Procedures Manual (1992), section
493.12.03(4.0).  These rules establish a three-step process for exhausting an
administrative appeal.  Prior to filing any grievance, the inmate is required to make
a good faith attempt to resolve the matter informally.  Failing informal resolution, a
step one grievance must be filed within fourteen days from the date on which the

alleged infraction occurred.  Upon receipt of a decision on the step-one grievance, an inmate has five days within which to appeal, by filing a step-two grievance. After receiving a response on the step-two appeal, an inmate has another five days to file a final, step-three appeal.  The inmate must submit a grievance at each step and wait either for a response to that grievance or for the time for receiving a response to expire.  Only then may the prisoner move to the next step.  DPS Manual § 493.12.03.13–.15.

Inmates may also file emergency, or privileged, grievances, with differing time limits and procedures, if a matter is "of a sensitive nature, and there exists a reasonable belief that punitive measures will be taken at the hands of facility staff or other inmate, or would otherwise be adversely affected if it is known at the facility that the complaint/grievance is being filed."  *Id.*  § 493.12.03.10.

Plaintiff argues that he was unaware of the grievance procedure during the times at issue here, because unnamed Defendants deliberately withheld books explaining the exhaustion requirement as set forth in the Prison Litigation Reform Act ("PLRA") of 1995, 42 U.S.C. § 1997e(a).  (Op. 2-3.)  Plaintiff has had two previous cases dismissed for his failure to administratively exhaust his claims.  *See Regan v. Oahu Cmty. Corr. Ctr.*, Civ. No. 04-00731 SOM; *Regan v. Dept. of Public*

*Safety*, 06-00066 JMS.[23]  These cases determined that Plaintiff had conclusive

knowledge of the DPS grievance procedures since no later than May 30, 2002.

Under the principles of collateral estoppel,[24] this court holds that Plaintiff has been

aware of DPS grievance procedures since May 2002, and was therefore aware of the

requirements for proper exhaustion during all relevant times in this action.

Moreover, even accepting Plaintiff's claim that he was unaware of the

exhaustion requirements of the PLRA, this does not support his contention that he

was unaware of the prison's grievance procedure or excuse his failure to

administratively exhaust his claims.  It is also clear that Plaintiff was, in fact, aware

of the PLRA's exhaustion requirements no later than February 17, 2005, when

---

[23] In both of these earlier actions, Plaintiff alleged claims identical to those
alleged in the present action, limiting those claims, however, to violations allegedly
occurring prior to February 9, 2004, the operative *beginning* date of Plaintiff's
claims in this action. In *Regan v. Dep't. of Pub. Safety*, Civ. No. 07-00029 JMS,
Plaintiff again alleges identical claims *commencing* on January 7, 2005, the date
that the claims in this action apparently expire.  Although Defendants have made
no arguments on this point, and the court makes no holding, it is apparent that
Plaintiff is simply filing and refiling the same claims, only changing their operative
dates.

[24] "To foreclose relitigation of an issue under collateral estoppel: (1) the
issue at stake must be identical to the one alleged in the prior litigation; (2) the
issue must have been actually litigated in the prior litigation; and (3) the
determination of the issue in the prior litigation must have been a critical and [ ]
necessary part of the judgment in the earlier action ." *Clark v. Bear Stearns & Co.*,
966 F.2d 1318, 1320 (9th Cir. 1992).

District Judge Mollway explicitly informed Plaintiff of them.  *See Regan v. Oahu Cmty. Corr. Ctr.*, Civ. No. 04-00731 SOM-LEK ("Order Dismissing Complaint, Denying Motions for Temporary Restraining Order and/or Preliminary Injunction, Denying Motion to Dispense with Security, and Granting Motion to Amend Complaint," at 10, Doc. No. 11.)

1.      Plaintiff's Remaining Arguments Re: Exhaustion

Plaintiff argues that he effectively exhausted the claims he raises herein when he submitted a generic grievance on August 30, 2005.  This grievance states:

> To make certain I have exhausted all claims or 'remedies', I'm hereby directing the Dept. and H.C.F. back to the periods when I was in the RAD unit (1B?), [?] and earlier periods for Module 2.  All claims I have thus far submited [sic] would apply to those periods. Examples include: overcrowding, lack of law library, housed with gangs, racial discrimination, cold water showers, lack of medical care, absence of legal help at law library, and everything else I have complained of before.  Thank you.

(Pl. Op., Ex. A.)

First, this court has already found that Plaintiff was aware of the DPS grievance policies long before August 30, 2005, when he submitted this grievance. Plaintiff knew by this time that he was required to submit a separate grievance for each of his complaints within fourteen days of the date the claim occurred.  Plaintiff

32

apparently submitted this grievance in response to proceedings in Civ. No. 04-00731 SOM, in which Plaintiff had already been made aware of potential problems with exhaustion of his claims in that action.  Plaintiff was apparently attempting to save his claims in that action, by filing this generic grievance attempting to encompass all of his claims.

Second, and most importantly, as this grievance is dated August 30, 2005, it only encompasses claims occurring within the fourteen days prior to this date, or claims occurring since August 16, 2005.  Plaintiff specifically alleges that his claims in this action occurred between February 9, 2004, and January 7, 2005, seven months before he filed this grievance.  As such, this grievance was not properly filed.  As noted above, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." and is not satisfied "by filing an untimely or otherwise procedurally defective . . . appeal."  *Ngo*, — U.S. at —, 126 S. Ct. at 2386 & 2382.  The court rejects Plaintiff's argument the he exhausted his claims by filing this generic grievance.

2.   Count 3

In Count 3, Plaintiff alleges that on or about April 20, 2004, continuing for approximately one month, and again on November 20, 2004, the prison showers dispensed cold water and an oily substance, in violation of the Eighth Amendment.

33

Plaintiff alleges that Defendants Frank and Tanaka, then the HCF Warden and Assistant Warden, knew or should have been aware of this problem.

Defendants provide six grievances that Plaintiff filed broadly related to this claim.  (*See* Defs.' Ex. D.)  The earliest of these grievances was filed in April 2005, and the latest was filed in January 2006.  These grievances concern the time periods beyond the operative dates of this Complaint, April and November, 2004.  One of these grievances, No. 123077, was filed after Plaintiff commenced this suit.  Plaintiff did not complete the grievance procedure for three of these, Nos. 121953, 116315, 123077.  The only fully exhausted grievances, Nos. 115758, 115826, and 113774, were not only filed months after the operative dates in the Complaint, but also complain that the showers were not cleaned properly, not that the showers were cold.  As such, Plaintiff has failed to administratively exhaust this claim and it is DISMISSED.

3.     Count 4

In Count 4, Plaintiff alleges he was exposed to second-hand smoke in violation of the Eighth Amendment.  Plaintiff fails to name any specific Defendant as responsible for this and does not provide any specific date that this allegation occurred, other than the general dates for all claims in the Complaint, February 9, 2004, to January 7, 2005.

Defendants provide four grievances that Plaintiff filed concerning this claim.  (*See* Defs.' Ex. E, Steps 1-3 in one grievance and Step 1 in the other.)   The first of these grievances was filed in May 2005, the last in October 2005.  Plaintiff failed to comply with the grievance process in all of these, failing to attempt to informally resolve the issue in the first grievance, and failing to complete the grievance process for the last.  None of these grievances concerns the time periods alleged in Plaintiff's Complaint.  As such, Plaintiff failed to administratively exhaust this claim and Count 4 is DISMISSED.[25]

4.    Count 6

In Count 6, Plaintiff alleges that he was denied recreational reading materials for "several months upon first entry at [HCF] and of course after[,]" in violation of the First Amendment.  (Comp. 26.)  Plaintiff names Defendants Frank, Tanaka, and Kaplan as having knowledge of this alleged denial of reading material.

Defendants submit six grievances Plaintiff filed relating to this claim. (*See* Defs.' Ex. F.)  The earliest was filed in May 2005, the latest in January 2006. These grievances do not encompass the time period alleged in the Complaint,

---

[25] Plaintiff also fails to name any specific Defendant as responsible for the allegations in this claim, thus, failing to state a claim against any named defendant.

February 9, 2004, to January 7, 2005.  As such, Count 6 is unexhausted and is

DISMISSED.[26]

    5.    <u>Count 14</u>

        In Count 14, Plaintiff alleges that he was denied a ladder to his bunk,

which caused him to "twist his ankle quite a few times," causing him pain, in

violation of the Eighth Amendment.  (Comp. at 46.)  Plaintiff also complains that he

was not issued closed-toe, supportive shoes, but only slippers, which caused him

pain when he exercised.  Plaintiff alleges that, due to this deprivation, he damaged

his knees, ankles, liver and kidneys (from taking Motrin), and *may* develop arthritis

or need surgery in the future.  Plaintiff does not set forth a specific date or time

period when these alleged deprivations occurred, thus, their operative dates are

--------

[26] The court is unaware of any constitutional right that inmates have to be provided recreational reading materials by the prison.  Plaintiff does not allege that he was denied the right to purchase recreational reading materials, or to be given such reading materials from family or friends, or even other inmates.  He simply alleges that, upon his initial placement at HCF he was not allowed access to the recreational reading library for a finite period of time.  A survey of the caselaw on this issue reveals no such right.  *See Hunnicutt v. Armstrong*, 305 F. Supp. 2d 175, (D. Conn. 2004) ("Research has revealed no constitutional right to unlimited pleasure reading") *aff'd in part vacated in part,* 152 Fed. Appx. 34 (2d Cir. 2005) citing *Pippins v. Adams County Jail,* 851 F. Supp. 1228, 1233 (C.D. Ill. 1994); *see also Williams v. Karnopp*, 2003 WL 23163053 (W.D. Wis. Jan. 27, 2003) (holding that restriction on number of books allowed for segregation inmate was "reasonably related to the prison's legitimate penological interest of persuading inmates in disciplinary segregation to improve their conduct in order to receive additional privileges").

between February 9, 2004, and January 7, 2005.  Plaintiff names Defendants Frank,

Tanaka, Shimoda, and Asato as being aware of his claims, and Defendants

Tumminello and Stampfle, apparently for having answered and denied his

grievances related to this claim.

Although Plaintiff fully grieved his claim that he was denied closed

shoes, which allegedly damaged his knees and ankles, he did not submit this

grievance until May 15, 2005, four months after the latest possible date alleged in

his Complaint.  (*See* Defs.' Ex. G. Griev. Nos. 113798 (Step 1), 113811 (Step 2),

and 116311 (Step 3).)[27]

Plaintiff failed to submit any grievances relating to the prison medical

department's alleged denial of supportive shoes or other accommodation to him.

He also filed no grievances or requests to be moved to a lower bunk, or to be

provided with a ladder to the top bunk, or relating to his claim that he had liver and

kidney damage resulting from taking Motrin for his pain.  As such, Plaintiff has not

administratively exhausted his claim that Defendants violated the Eighth

_____

[27] Plaintiff's grievance states that his "knees, ankles, calfs [sic], and tendons
hurt from exercising without shoes," and mentions that this pain was also likely
from "getting off the bunk beds," in the modules.  (Griev. No. 113798.)  Plaintiff
was told to stop exercising and to submit a medical request for treatment.  Plaintiff
apparently did not do so, instead arguing that the grievance respondent should
submit a medical request for him.

Amendment by denying him supportive shoes, a ladder for his bunk bed, treatment for his alleged liver and kidney problems, or any other accommodation relating to these claims.  Count 14 is DISMISSED for failure to administratively exhaust the claims therein.

      6.    <u>Count 19</u>

        In Count 19, Plaintiff complains that, at unspecified times, his mail was often seven to twenty-one days late, or that it was opened, or returned to sender in violation of the First Amendment.  Plaintiff names Defendant Leatumauga as responsible for this alleged deprivation, because Leatumauga answered his grievances concerning this claim, and also names Defendants Frank and Shimoda as having implemented a policy that encouraged "mailroom misconduct."  (Comp. at 55.)  Plaintiff does not identify this policy.

        Defendants provide fifteen grievances that Plaintiff submitted relating to his claims that Defendants interfered with his mail.  (*See* Defs.' Ex. J.)  The first of these grievances was filed on March 5, 2005, well after the operative dates in the Complaint, complaining that he received a letter on March 4, 2005, that was date-stamped on February 24, 2005.  (*Id.*, Griev. No. 112169.)  Plaintiff filed a Step 2 appeal of this grievance, No. 116265, but failed to file a Step 3 appeal.  Thus, this

grievance is unexhausted and does not relate to any claim Plaintiff makes in this

Complaint.

Plaintiff's remaining grievances were also all filed long after the

operative dates of the Complaint, and involve allegations of mail interference

occurring long after those dates.  Only two of these grievances, Grievance Nos.

113840 and 115537, are fully-exhausted through Step 3 of the grievance procedure,

and these two complain of an alleged mail delay occurring long after the dates

alleged in the Complaint.  Count 19 is DISMISSED for Plaintiff's failure to timely

and fully administratively exhaust the claims therein.[28]

---

[28] These grievances also reveal that Plaintiff's claims of unconstitutional interference with his personal and legal mail are patently frivolous.  In three of his grievances (and their appeals), Plaintiff complains of relatively short delays.  (*See* Griev. Nos. 112169, 116265 (letter date-stamped Feb. 24, 2005, was received Mar. 4, 2005, representing a delivery time of five business days); Griev. Nos. 113840, 116266, 118097 (mail from the court date-stamped Jun. 8, 2005, received Jun. 14, 2005, representing four business days for delivery); Griev. No. 126460 (mail date-stamped by the court on Jun. 30, 2006, received Jul. 5, 2006, representing one business day for delivery).  These "delays" are not of constitutional significance and fail to state a claim as a matter of law.  *See Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (relatively short-term, non-content-based disruption in delivery of inmate mail is not enough to state a  First Amendment claim); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974) (an isolated incident of delay generally is insufficient to raise a § 1983 claim).

Plaintiff also complains that his personal mail was opened and items were removed.  (*See* Griev. Nos. 115537, 116270, 120072, 121912).  Plaintiff has no privacy in his personal, non-legal mail, and the prison is within its rights removing the oversized photographs detailed in the grievance.  Finally, Plaintiff complains that mail from the court, and from state and federal agencies, was opened.  This

7.      Count 22

In Count 22, Plaintiff alleges that he was allergic to the prison soap, and that Defendants refused to give him a different soap, in violation of the Eighth Amendment.  Plaintiff does not specify when this occurred, therefore, the operative dates for this claim are between February 9, 2004, and January 7, 2005.  He names Defendants Tumminello, Stampfle, and Mun as responsible, presumably because they answered his grievances on this issue, and Defendants Frank, Tanaka, and Shimoda, presumably in their supervisory capacities at the prison.

Plaintiff filed a grievance concerning this issue on March 8, 2005. (*See* Defs.' Ex. K, Griev. Nos 114038m 115517, 115760.)  Although Plaintiff did, in fact, fully grieve this issue, this grievance does not relate to any dates alleged in the Complaint.  Even if this grievance did relate to allegations occurring on or before January 7, 2005, it would have been considered untimely, as an inmate must grieve a claim within fourteen days of the date of its occurrence.  As such, Plaintiff

---

type of mail is not considered "legal" mail, and the prison may open such mail outside of Plaintiff's presence to inspect it for contraband.  *See Witherow v. Paff*, 52 F.3d 264, 265-66 (9th Cir. 1995); *Mann v. Adams*, 846 F.2d 589, 590-91 (9th Cir. 1988) (*per curiam*); see also *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) (mail from the courts is not legal mail), *amd'd by* 135 F.3d 1318 (9th Cir. 1998).

has failed to timely or properly administratively exhaust this claim and it is DISMISSED.

8.    Count 23

In Count 23, Plaintiff alleges that Defendants failed to provide him with adequate writing materials, hindering the filing of his Rule 40 state post-conviction petition.  Although Plaintiff filed a grievance related to this issue, through Step 3, he did not do so until August 1, 2006, more than a year and a half after the dates alleged in the Complaint, and two years after he had already filed the Rule 40 petition.  (*See* Defs.' Ex. L, Griev. Nos. 126869 (Step 1), 126816 (Step 2), 126479 (Step 3).)  In that grievance, moreover, Plaintiff only alleges that the paper he received is inadequate because it is too "dark white," and the courts would not allow him to use this type of paper, a patently frivolous claim.  In addition to granting summary judgment as to Count 23, it is also DISMISSED for Plaintiff's failure to exhaust administrative remedies.

9.    Count 24

In Count 24, Plaintiff alleges that he had a difficult time receiving writing materials to communicate with his family.  Plaintiff does not specify any dates when this occurred, or name any Defendant as responsible for this allegation.

Defendants provide Plaintiff's grievances relating to the alleged lack of writing paper for personal use.  (*See* Defs.' Ex. L, Griev. Nos. 126869 (Step 1); 126816 (Step 2); and 126479 (Step 3).)  These grievances were not filed until August 1, 10, and 27, 2006, respectively, after this suit was commenced and approximately a year and a half beyond the dates alleged in this Complaint. Moreover, Plaintiff's grievances do not allege a denial of all writing paper, but only that the paper he receives is too dark white.  In addition to granting summary judgment as to Count 24, it is also DISMISSED for failure to exhaust administrative remedies.

10.    Count 29

In Count 29, Plaintiff alleges that he was denied the ability to accrue college credits because he was over twenty-five years old.  He alleges this violated his right to equal protection under the law.  Plaintiff submitted no grievances at any time regarding this claim.  Count 29 is DISMISSED for Plaintiff's failure to exhaust administrative remedies.

C.    **Defendants' Remaining Arguments**

Defendants also contend that: (1) Plaintiff's claims accruing prior to February 27, 2004, two years before the date Plaintiff filed his Complaint, are time-barred; (2) Plaintiff makes no specific allegations against any particular Defendant,

and his claims against all Defendants should therefore be dismissed; and (3) they are entitled to qualified immunity.  In support of these statements, Defendants propound the barest minimum argument, simply reproducing generic legal standards, without attempting to analyze and apply the law they cite as it relates to the specific facts alleged in each of Plaintiff's claims.  Nor do Defendants recognize that the court must liberally construe Plaintiff's claims where possible, to do justice to a pro se litigant.

     1.     <u>Statute of Limitation</u>

     Defendants do not attempt to determine or alert the court as to *which* of Plaintiff's individual claims allege events occurring before February 27, 2004, and are thus, time-barred.  Instead, they leave this tedious exercise for the court to undertake.  Although Plaintiff fails to date many of his claims, he does broadly allege that his claims occurred between February 9, 2004, and January 7, 2005.  This suggests that at least some claims accrued after February 27, 2004.  Dates for some of Plaintiff's claims can be determined by reference to his grievances.  Moreover, Plaintiff alleges specific dates after February 27, 2004, in some of the claims in the Complaint.  (*See eg.*, Count 3, alleging accrual of the claim on April 20, 2004, and again on November 20, 2004).  Defendants do not account for these possibilities in their argument.

Nor do Defendants appear to realize that, although Plaintiff states that his claims occurred between February 9, 2004, and January 7, 2005, his claims are subject to equitable tolling during any periods that Plaintiff was attempting to exhaust his claims. *See Brown*, 422 F.3d at 942-43 (citations omitted). Defendants' argument regarding dismissal of Plaintiff's claims as time-barred is DENIED.

2.    Dismissal of All Defendants for Failure to State a Claim Against Them

In broadly seeking dismissal of *all* Defendants for Plaintiff's purported failure to name any specific Defendant as personally responsible for any individual claims, Defendants again fail to examine each of Plaintiff's claims to determine whether Plaintiff names any particular Defendant within and adequately ties his claims to any Defendant. (*See* Mot. 11 -13 ("The Claims Against Defendants Must Be Dismissed Since There Are No Allegations That They Participated In or Caused the Deprivations Complained Of" and "Plaintiff does not allege that Defendants personally participated in or directed any actions that caused the deprivations he complains of.") Defendants apparently expect the court to carefully review each of Plaintiff's claims to determine whether he properly alleges a connection between his claim and any particular Defendant.

Defendants also make a blanket argument relating to supervisory liability, but fail to identify each Defendant's position within the DPS, and what

44

duties those positions encompass.  This information would, at a minimum, alert the court as to which Defendants are supervisors, and which Defendants are not. Without this information the court has no competent evidence showing whether any Defendant named in a particular claim was or was not actually involved in Plaintiff's allegations by virtue of their supervisory capacity or otherwise.

In fact, several of Plaintiff's claims do allege that specific Defendants are responsible for his claims, either personally, or due to policies and procedures that they allegedly propounded.  (*See eg.*, Count 1, naming Dr. Patel; Count 2, naming Nielson, Espinas, Frank, Kaplan, and Tanaka; Count 3, naming Frank and Tanaka; Count 4, naming Frank and Tanaka; Count 6, naming Frank, Tanaka, and Kaplan; Count 14, naming Frank, Tanaka, Shimoda, Asato, Tumminello, Stampfle, and Mun; Count 15, naming Dr. Patel, etc.)

Rather than counter Plaintiff's allegations against each Defendant with documents, declarations, and uncontroverted facts, Defendants issue a blanket argument and hope the court will not notice that it is neither precise nor supported by the applicable law as applied to the particular facts here.  The court has no duty to comb the record to find support for or against Defendants' arguments.  As such, the court rejects this argument.

3.    Qualified Immunity

Defendants assert that they are entitled to qualified immunity from Plaintiff's claims without the barest attempt to explain why.  Defendants supply seemingly appropriate buzz words and catch phrases in support of their qualified immunity argument, without applying the relevant standards to the facts presented in each claim.  It does not appear that Defendants fully understand the qualified immunity analysis, as they completely ignore the first part of the qualified immunity test, as set forth in *Saucier v. Katz*,  533 U.S. 194, 201 (2001), and misconstrue the second part of the test.  Defendants argument in its entirety is that "Plaintiff has not identified any clearly established right that Defendants allegedly violated."  (Mot. to Dismiss First Amended Comp. 14.)

"The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation."  *Wilkins v. City of Oakland*, 350 F.3d 949, 953 (9th Cir. 2003) (citing *Saucier*, 533 U.S. at 201) (noting that the threshold question in a qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").  If no constitutional violation is shown, the inquiry ends.  *Saucier*, 533 U.S. at 201.  If, however, the allegations demonstrate a constitutional violation, the next question is whether the

46

constitutional right was "clearly established," and if so, would it have been clear to a reasonable official that his or her conduct was unlawful. *Doe v. Lebbos*, 348 F.3d 820, 826 (9th Cir. 2003). This is not a general inquiry, but specific, and the plaintiff bears the burden of showing that the right allegedly violated was clearly established. *See Saucier*, 533 U.S. at 201 (stating that the second inquiry "must be undertaken in light of the case's specific context, not as a broad general proposition."); *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996).

Notwithstanding Defendants' argument to the contrary, Plaintiff *has* identified clearly established rights that he believes Defendants violated. He claims First, Sixth, Eighth, and Fourteenth Amendment violations. That is not to say that Plaintiff establishes whether Defendants have violated these rights, only that Plaintiff *identified* these rights as allegedly having been violated. Of course, this identification is not the test for qualified immunity. Defendants must either show that there has been no constitutional violation under the facts as alleged, or that, where a constitutional right has allegedly been violated, the contours of that right were not clearly established at the time it occurred, so that Defendants had fair warning that their conduct was violative. *See Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002) (stating that the "salient question is whether the law . . . gave [officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional.").

47

First, Defendants do not even argue that Plaintiff's claims fail to support a constitutional violation, except as to his claims in Counts 1 and 15 against Dr. Patel.  Nonetheless, this court has found that there are no constitutional violations alleged in Counts 1, 2, 5, 17, 18, 23, and 24.  As such, the qualified immunity inquiry ends as to these claims, and Defendants are, in fact, entitled to qualified immunity from them.  *See Saucier*, 533 U.S. at 201.

Second, Defendants present no viable argument regarding Plaintiff's remaining claims in Counts 3, 4, 6, 14, 19, 22, and 29, either showing that, accepting Plaintiff's allegations as true, there have been no constitutional violations, or showing that the law governing these claims was not clearly established at the time they occurred.  While it is true that Plaintiff bears the burden of establishing whether the alleged rights here were clearly established, that does not relieve Defendants from their burden of *defending* against Plaintiff's claims.  Qualified immunity is denied as to Plaintiff's claims in Counts 3, 4, 6, 14, 19, 22, and 29.

## III. <u>CONCLUSION</u>

Defendants' Motion to Dismiss and Motion for Summary are GRANTED as follows: Summary Judgment is granted as to Counts 1, 2, 15, 17, 18, 23, and 24.  Defendants are also entitled to qualified immunity for these claims.  Counts 3, 4, 6, 14, 19, 22, 23, 24, and 29 are DISMISSED for Plaintiff's failure to

exhaust prison administrative grievances relating to these claims.  Qualified

immunity is DENIED as to Counts 3, 4, 6, 19, 22, and 29.  The Clerk is directed to

enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 8, 2007.



_____
David Alan Ezra
United States District Judge

REGAN v. DOES, et al., CV 06-00121 DAE-LEK; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
AND MOTION FOR SUMMARY JUDGMENT; dmp/Orders 07/Regan 06-121 (mot to dsm or MSJ)